## Bilancich's Estate.

*Wills — Subscribing witnesses — Appeals from register — Testamentary capacity—Undue influence.*

1. In Pennsylvania, a will is properly proved by the testimony of two or more competent witnesses to the testator's signature; subscribing witnesses are unnecessary except in the case of gifts to charities, and in the case of wills containing such gifts, both subscribing witnesses should subscribe in the presence of the testator and of one another.

2. The fact that the scrivener was one of the legatees, a nephew of the testator, who wrote his letters, signed his (testator's) name to them after testator had read them, drew his checks, which testator signed, and occasionally cashed checks for him, although not regularly employed by him, does not make him the testator's general agent so as to give him such a confidential relationship to testator as to raise a presumption of undue influence.

3. Proponents of a will are not required to show lack of undue influence; the burden of showing undue influence rests upon the contestants.

Exceptions to decree dismissing appeal from the Register of Wills. O. C. Phila. Co., Jan. T., 1925, No. 206.

The facts appear from the opinion of the court *in banc* and from the following extract from the adjudication of the hearing judge, THOMPSON, J.:

"Testimony was taken in respect to the appeal, from which it appears that the decedent was a bachelor, sixty-five years of age, lived in a room at No. 637 Pine Street, but took his evening and Sunday meals at the home of his sister, Mrs. Aquarone, at No. 223 Montrose Street, this city. His sister is now dead, of which more hereafter.

"The decedent's business was that of a shipping agent, meaning thereby that he procured crews for outgoing vessels, doing the same class of work that was formerly done by the sailors' boarding-house keepers. He also took contracts for painting boats, cleaning boilers, &c. As to the painting business, he was not experienced in the same and relied upon employees to make estimates and bids for same. It appears that in at least one instance the estimate was too low, and apparently decedent lost money on the job, but the testimony does not show that this happened frequently. Much is made of this by the contestant as showing business incapacity, but I do not attach much importance to one or even more contracts in which the decedent lost money, for the reason that the decedent relied upon others than himself in making the estimate, and the mistake, if any, was theirs.

"The estate of the decedent has been stipulated to be worth $20,000, partly real estate. He died on the 7th day of January, 1925, from pneumonia, after an illness of nine days. Prior thereto he was attending to his business as usual. The evidence produced by the contestant was offered on the theory that subsequent to the year 1911, at which time decedent went to Palo Alto for treatment, presumably for tuberculosis, he was in a failing state of health and not the business man he was prior thereto. I will comment on the testimony of the witnesses later on.

"Decedent was what might be called a rough man in appearance, manner of living and the transacting of his business, as were the persons with whom he came for the most part in business contact. Sailors looking for jobs, laborers, keepers of sailors' boarding-houses and men of this type were his daily associates. He was illiterate, talked broken or pigeon English, and while he could write, he did so with difficulty. When occasion required, he told his nephew, John E. Bachich, what he wanted to say, and the nephew wrote the letter for him, sometimes signing the decedent's name at his express

direction, but in every instance, before the letter was mailed, the decedent read it over and was familiar with its contents, and sometimes signed the same.   Decedent was an Austrian by birth; when he came to this country is not stated.   He had an office on Walnut Street above Second, and afterwards on Second Street below Walnut, for the transaction of his business, where most of the witnesses called and talked with him, but not on business matters.

"Decedent's family consisted of a brother and sister in Jugo-Slavia, a brother who called himself Martin, but whom the decedent referred to in his will as Mato, and a sister, Margaretta Aquarone, who died shortly before the date of the will in question, April 21, 1924.

"The will in dispute gives legacies of $600 each to his brother and sister in Jugo-Slavia, $600 to the appellant here, and the balance of the estate to the four children of Margaretta Aquarone, his deceased sister, as follows: Luke F. Bachich, Anna Dryar, Stephen F. Bachich and John E. Bachich.   This will was drawn by John E. Bachich at the request of the decedent and from his written memorandum, and, as to general intent and form of statement, was copied by Mr. Bachich from a previous will of the decedent, dated the 17th day of November, 1914, a copy of which will be found in the notes of testimony on page 103.   The will of 1914 gave a legacy of $500 to his mother, who was dead at the time the will before me was written, $300 to his sister, Ane, in Jugo-Slavia, and $400 to Mato, or Martin Bilancich, and the residue of his estate to his sister, Margaretta Aquarone, and in the event of her death in his lifetime he gave the same to her children living at his decease.   So it will be seen that the reason for the drawing of the new will was the death of his mother and the death of his sister, Mrs. Aquarone, although this does not necessarily follow, as the will of 1914 provided that if his mother was dead, the $500 given her was to go to her children, and also provided that if Mrs. Aquarone was dead, her bequest would go to her children.   The will before me eliminates the mother by reason of her death, increases the legacy to his sister, Anne, in Jugo-Slavia, from $300 to $600, and also increases the legacy to Mato, or Martin, Bilancich, his brother, from $400 to $600; so it can be stated that the will of 1924 is substantially the same testamentary disposition of decedent's estate as the will of 1914, with the changes above noted.   John E. Bachich, who drew the will before me, had the will of 1914 before him and used the phraseology therein contained.   He took the back off the old will and put it on the new will, and after execution retained possession of the will before me until the death of the testator. . . .

"In cases of this character it frequently happens that the will attacked is that of an elderly woman who never was in business, lived a retired life, and it is often difficult to get any witness who talked to the maker of the paper on business matters, but in the case before me the decedent was in active business up to the day of his death, transacting business with his bank the same as any other depositor, and if, as contestant alleges, he lacked testamentary capacity, certainly some one who had business dealings with him could be found who would testify to that effect.   This class of testimony is absolutely lacking in this case.

"No testimony was offered tending to connect the two brothers and one sister, the residuary legatees, with John E. Bachich, with the preparation of the will or the exercise of any undue influence on the testator.   In fact, the names of the above three persons were not referred to by any of the witnesses. . . .

"In addition to the witnesses to the will to prove execution, the proponent . . . called John E. Bachich for direct examination, who testified that he pre-

pared the will in dispute from memoranda given him by the testator; that he saw the testator read the will; that testator kept his own books, showing numerous business entries therein, particularly in 1924; that testator was sick only nine days and died from pneumonia. . . .

"The testimony of the contestant falls far short of showing that testator lacked testamentary capacity or was unduly influenced by any one. In my judgment there is no serious dispute over a material fact, and I am of the opinion that if an issue were awarded and a verdict rendered against the will, the court would not sustain the same. . . .

"For the above reasons the appeal is dismissed."

*Francis J. Bowden,* for exceptants; *Edward J. Kirchner,* contra.

VAN DUSEN, J., Oct. 30, 1925.—The exceptions involve three propositions:

1. That the execution of the will was not proved. Part of the argument seems to be based on an understanding that the law requires the presence of both witnesses, together with the testator, at the time each signs. This is so only with respect to charitable bequests. All his will requires is proof of testator's signature by "two or more competent witnesses;" and this was furnished by two of the subscribing witnesses, who were competent, and there was no dispute about it. Though one of them, on cross-examination, became confused and made inconsistent statements about the order in which the signatures were affixed, the number of persons in the room, etc., he is none the less competent; and as the judge who sat at preliminary hearing found that the signature was proved by him and one other subscribing witness, we cannot upset the finding, and, in any event, would not be disposed to do so after reading the testimony.

2. That the scrivener of the will, who was one of the beneficiaries, held a confidential relation to the decedent, and there was, therefore, a presumption of undue influence, which the proponents failed to overcome. This was a nephew, who wrote testator's letters and signed his name to them after testator had read them, drew his checks (which testator signed himself) and occasionally cashed checks for him, but was not regularly employed by him. A general agent does bear a confidential relation to a testator; but we know of no case, and are referred to none, which holds that friendly offices such as these, no matter how constant and how useful, are to be so characterized. As this necessary element to raise a presumption of undue influence is lacking, we need not discuss whether there is sufficient evidence to support a finding as to the other elements.

3. That proponents failed to show lack of undue influence. If it had been necessary for the proponents to sustain any such burden, they would go very far in that direction by the undisputed evidence that this will followed closely the lines of a will prepared for the testator at his own request, many years before, by a lawyer who knew him well—the only changes being those made advisable by deaths which had intervened—and that the testator gave instructions for the present will in a memorandum in his own handwriting which was produced.

The exceptions are dismissed.